**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHAEL LANCENESE,                           :
                                             :
            Plaintiff,                       :
                                             :
      v.                                     :          NO. 05-CV-5951
                                             :
VANDERLANS AND SONS, INC.,                   :
                                             :
            Defendant.                       :

**MEMORANDUM**

Presently pending is Defendant's Motion for Summary Judgment, and Plaintiff's response thereto. For the following reasons, Defendant's Motion will be granted in part, and denied in part.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On June 10, 2005, Plaintiff Michael Lancenese was injured in an accident involving a Lansas domehead plug (hereinafter "plug"), which was manufactured by Defendant Vanderlans and Sons. The plugs are used to test the integrity of pipes. They are inserted into either end of a pipe and inflated. Air is then pumped into the pipe in order to test for leaks. Because "the nature of the plug seal within the conduit involves pressure between the body member of the plug and an interior wall of the conduit, failure of the plug, for example by fatigue or inadvertent over inflation can cause injury to personnel near the plug." Def.'s Motion for Summary Judgment, Exhibit 4. To minimize the risk of injury, Defendant warns users to remain clear of the area in front of the plug, and to "block" the ends of the plugs against potential movement. Def.'s Motion for Summary Judgment, Exhibits 2, 8.

At the time of the accident, Plaintiff was employed as a pipe foreman by Tru-Line Contractors Inc., a subcontracting company involved in construction of a waste water treatment plant. The plugs involved in the accident were manufactured and sold by Defendant to Marona

Construction Company, who in turn loaned the plugs to Tru-Line Construction Inc..  At the time of his injury, Plaintiff was testing a 36" pipe for leaks.  He inserted two of Defendant's plugs into each end of the pipe, inflated them, and injected air into the pipe in order to conduct the test.  After the test was completed, the air inside the pipe was released.  Plaintiff became concerned that the air was not being fully released, and he extended his arm in front of one of the plugs.  At that moment, the plug discharged, striking Plaintiff in the hand and arm and causing his injuries.

Plaintiff filed the instant action against Defendant alleging three Counts.  In Count I Plaintiff claimed liability under a negligence theory, in Count II liability under a strict liability theory for design defects, manufacturing defects, and for failure to adequately warn, and in Count III liability under a breach of express and implied warranties.

## II.    LEGAL STANDARD

Summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2025 (1986).

A party seeking summary judgment bears the initial responsibility of identifying the basis for its motion, along with evidence clearly demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catreet, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  Rule 56(e) of the Federal Rules of Civil Procedure requires the nonmoving party to supply sufficient evidence, not mere allegations, for a reasonable jury to find in the non-movant's favor.  See Oldson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).  This evidence

must be viewed in the light most favorable to the nonmoving party.  See Anderson, 477 U.S. at 256.

## III.      DISCUSSION

Plaintiff now states that the claims for breach of express warranty and breach of implied warranty of fitness for a particular purpose are voluntarily withdrawn.  Pl.'s Response in Opposition to Motion for Summary Judgment at 15, 16.  Plaintiff also argues that they are not advancing a design defect claim.  Id. at 11.  Therefore, summary judgment will be granted to the portions of Count III which make claims for breach of express warranty and implied warranty of fitness for a particular purpose, and to the extent that the language of Count II indicates a claim for strict liability under a design defect theory.

### A.      Plaintiff's strict liability claims

Under Pennsylvania law, "strict liability allows recovery when a defective product that is 'unreasonably dangerous' causes harm to a user or consumer."  Moyer v. United Dominion Indus., 473 F.3d 532, 538 (3d Cir. 2007). The determination of whether a product is "unreasonably dangerous" is a matter of law.  Azzarello v. Black Brothers Co., 480 Pa. 547, 391 A.2d 1020 (Pa. 1978).  In making this threshold determination, a trial judge must "engage in a risk-utility analysis, weighing a product's harms against its social utility."  Surace v. Caterpillar, Inc., 111 F.3d 1039 (3d Cir. 1997).  The Third Circuit identified some of the factors relevant to this analysis:

> (1) The usefulness and desirability of the product -- its utility to the user and to the public as a whole; (2) The safety aspects of the product -- the likelihood that it will cause injury, and the probable seriousness of the injury; (3) The availability of a substitute product which would meet the same need and not be as unsafe; (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) The user's ability to avoid danger by the exercise of care in the use of the product; (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or

instruction; and (7) The feasibility, on the part of the manufacturer, of spreading
the loss of [sic] setting the price of the product or carrying liability insurance.

Id. at 1046 (quoting Dambacher v. Mallis, 336 Pa. Super. 22, 50 n.5, 485 A.2d 408, 423 n.5
(Pa. Super. Ct. 1984).  Plaintiff argues that this analysis is only appropriate in design defect
cases, not in manufacturing defect cases, and that since they are not alleging a design defect,
that the court should not engage in this analysis.  Pl.'s Response in Opposition to Motion for
Summary Judgment at p. 11.

Pennsylvania law recognizes three defects that are subject to strict liability;
manufacturing, warning, and design defects.  Phillips v. Cricket Lighters, 576 Pa. 644, 665, n.1,
841 A.2d 1000, 1012, n.1 (Pa. 2003). The parties have not cited, and the court has not found,
any authority supporting the proposition that the "unreasonably dangerous" determination does
not apply to manufacturing defects.  The Azzarello Court defined the word "defect" for the
purposes of products liability in Pennsylvania as "not limited to its usual meaning i.e., a fault,
flaw or blemish in its *manufacture* or fabrication.  Rather, the critical factor under this
formulation is whether the product is 'unreasonably dangerous.'"  Id. at 555 (emphasis added).
The Court, having specifically recognized manufacturing defects as falling within this area, did
not exclude such defects from the question of whether the product was "unreasonably
dangerous."  Additionally, the Superior Court cases which have outlined the factors to be
considered in making this determination have never limited the applicability of the test to design
defect cases.  See Dambacher, 336 Pa. Super. at 50 n.5; Fitzpatrick v. Madonna, 424 Pa.
Super. 473, 476-77, 623 A.2d 322, 324 (Pa. Super. Ct. 1993); Phillips v. A.P. Green
Refractories Co., 428 Pa. Super. 167, 180, 630 A.2d 874, 881 (Pa. Super. Ct. 1993); Riley v.
Warren Mfg., Inc., 455 Pa. Super. 384, 391, 688 A.2d 221, 225 (Pa. Super. Ct. 1997).

The court therefore concludes that the risk-utility analysis is appropriate in the instant
action, and will apply the test to the Lansas domehead plugs.

1.      The usefulness and desirability of the product -- its utility to the user and to the public as a whole

The evidence clearly indicates the usefulness and desirability of using domehead plugs in industrial settings to test the integrity of pipes.  The deposition testimony of a variety of witnesses, including the Plaintiff, indicate that plugs are routinely used in order to insure that pipes do not leak. Def.'s Motion for Summary Judgment, Exhibits 5, pp. 30-32, Exhibit 11, p 25, Exhibit 12, pp. 16-17.  The testing is necessary in order to prevent potentially costly repairs in the future; in the instant case, the testing was being conducted prior to pouring concrete over the pipes.  Def.'s Motion for Summary Judgment, Exhibit 12, p. 44.  The court concludes that the product is useful and desirable in this industry, and that this factor therefore weighs in favor of Defendant.

2.      The safety aspects of the product -- the likelihood that it will cause injury, and the probable seriousness of the injury

Defendant concedes that the plugs carry a risk of serious injury.  Def.'s Motion for Summary Judgment at p. 13.  The nature of the test, which involves using the plugs to block both ends of a pipe and then fill the pipe with air, creates a risk that the plug will eject with great force.  However, a product is not defective simply because accidents may occur during its use. See Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893 (Pa. 1975); Pegg v. General Motors Corp., 258 Pa. Super. 59, 391 A.2d 1074 (Pa. Super. Ct. 1978).  It is appropriate to consider the actual rate of injuries caused by a particular product.  See Monahan v. Toro Co., 856 F. Supp. 955, 958 (E.D. Pa., 1994).  In this case, the actual rate of injury is apparently low.  Defendant reports only four claims of injury, and none of the witnesses who gave deposition testimony, including Plaintiff, had ever witnessed any injury prior to this accident.  Def.'s Responses to Pl.'s Interrogatories at ¶ 17; Def.'s Exhibit 12, p. 38, Exhibit 14, p. 25.  Because of the low rate of injury, the court concludes that this factor weighs in favor of Defendant.

3.      The availability of a substitute product which would meet the same need and not be as unsafe

The record indicates that there is not a substitute product which would meet the same need and not carry similar risks.  The nature of the testing process requires pressure that could result in the expulsion of whatever device is used to seal the pipe.  Therefore, the court concludes that this factor weighs in favor of Defendant.

4.      The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

The manufacturer cannot fully eliminate the unsafe character of the product, because, once again, of the nature of the testing process.  Defendant does, however, admit that they could include blocking devices with each set of plugs.  Def.'s Motion for Summary Judgment at p. 14.  Viewing the evidence in the light most favorable to the non-moving party, the court concludes that Defendant could, to a certain degree, eliminate the unsafe character of the product by including such blocking devices.  The court, therefore, finds that this factor weighs in favor of Plaintiff.

5.      The user's ability to avoid danger by the exercise of care in the use of the product.

This factor weighs heavily in favor of Defendant.  The danger inherent in the plugs can be avoided by standing clear of the areas directly in front of the plug, and thus, avoiding being in the path of the plug should it eject.  The "proper focus ... is an objective inquiry into whether the class of ordinary purchasers of the product could avoid injury through the exercise of care in use of the product..." Surace v. Caterpillar, Inc., 111 F.3d 1039, 1052 (3d Cir. 1997). Here, the ordinary consumers of the domehead plugs are construction workers engaged in the testing of the integrity of pipes.  The record indicates that domehead plugs are in common use in the pipe industry for testing pipelines.  Def.'s Motion for Summary Judgment, Exhibit 5, pp. 30, 63-64. The exercise of due care for such individuals would include standing clear of the area in front of

the plug until the air inside the pipe has been fully released.

>    6.    The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction.

This factor similarly weighs heavily in favor of Defendant.  The plugs are not consumer products, as they are used in construction sites for the very specific purpose of testing the integrity of pipes.  There is, consequently, very little general public knowledge of the obvious condition of the product.  The product is marketed specifically to the construction industry, and the anticipated users are therefore likely to have some experience and understanding of the dangers inherent in the product.  In any event, the warnings affixed to the product are suitable to provide the user with awareness of the dangers inherent in the plugs and their avoidability.

Plaintiff argues that no warnings were present on the plug, and in support of this proposition attaches the expert report of Paul Dreyer, who concluded that no warning tag was attached to the plug.  This conclusion is contradicted by the evidence on the record.  The report of the Occupational Safety and Health Administration (hereinafter "OSHA") states that "the following pertinent warnings were visible on the [test] bag:

BLOCK PLUG AGAINST MOVEMENT

STAY CLEAR WHILE IN USE."

Def.'s Motion for Summary Judgment, Exhibit 18.

The OSHA report also states that Defendant's literature included a warning which read "Always stay out of the 'DANGER ZONE' This is the area around the pipe line containing the plug."  Id. The presence of the warnings on the plug itself are further indicated in several pictures attached both to the OSHA report, and as Exhibit B of Defendant's Reply in Support of Motion for Summary Judgment.

Additionally, the relevant question is whether the warnings were sufficient at the time

that product left the manufacturer.  Under comment "n" of Section 388 of the Restatement

(Second) of Torts, a supplier's duty to warn is discharged by providing information to third

parties upon whom it can reasonably rely to communicate the information to the ultimate users

of the product. See Phillips v. A.P. Green Refractories Company, 428 Pa. Super. 167, 630 A.2d

874, 882 (Pa. Super. Ct. 1993) (holding that Section 388 is available as a defense in strict

liability actions). See also Smith v. Walter C. Best, Inc., 927 F.2d 736, 739-42 (3d Cir. 1990).

Here, Defendant provided the warning materials when it sold the plugs to Marona Construction

Company, who later lent the plugs to Plaintiff's employer.  Def.'s Resp. to Pl.'s Interrogatories at

¶ 9.

> 7.      The feasibility, on the part of the manufacturer, of spreading the loss by
>         setting the price of the product or carrying liability insurance.

Although a manufacturer is usually able to spread the cost of a plaintiff's loss to all

consumers of a product by raising the price of the product, the feasibility of doing so depends

upon balancing the remaining factors in the risk/utility analysis.  See Riley v. Becton Dickinson

Vascular Access, 913 F. Supp. 879, 880 (E.D. Pa. 1995); Monahan, 856 F. Supp. at 955; Van

Buskirk v. West Bend Co., 100 F. Supp. 2d 281, 289 (E.D. Pa. 1999). If after examining the first

six factors, the utility of the product outweighs its risks, then shifting the cost of the plaintiff's

loss to the defendant is not fair, and therefore, not feasible. Id.  Here, the court has concluded

that five of the six factors weigh in favor of Defendant.  Therefore, Defendant should not have

to spread among its customers the economic loss resulting from injuries from a product for

which the risk of harm can be eliminated by proper use of the product and by heeding the

safety warnings.

Weighing the above factors, the court concludes that the domehead plugs

manufactured by Defendant are not "unreasonably dangerous."  As a result, summary judgment

will be granted as to Count II.

B.      Plaintiff's negligence claims

Plaintiff has produced sufficient evidence to survive summary judgment on the negligence claim in Count I.  Defendant admits that there is a dispute as to why the plug failed. Def.'s Motion for Summary Judgment at p. 2.  Plaintiff's expert, Mr. Dreyer, concluded that the plug failed as a result of improper vulcanization.  Pl.'s Response in Opposition to Motion to Dismiss, Exhibit C.  Mr. Dreyer identified several allegedly negligent acts or omissions in his report, including 1) failure to employ adequate quality control procedures, 2) failure to inspect or test the critical steam supply pressure regulators used in the manufacturing process to ensure that the vulcanization process parameters are uniform, 3) failure to utilize adequate domehead plug pressure testing under the most rigorous use to ensure that the product will perform as designed and expected, and 4) failure to mimic field conditions when testing the plug.  Id. These allegations are sufficient to establish a genuine issue of material fact, and therefore summary judgment would be inappropriate.

C.      Plaintiff's breach of warranty claims

As discussed above, Plaintiff has voluntarily withdrawn both the breach of express warranty claims and the breach of the implied warranty of fitness for a particular purpose claims.  What remains in Count III is a claim for breach of the implied warranty of merchantability.  To establish a breach of the implied warranty of merchantability, Plaintiff must show that the product was defective.  Altronics of Behlehem, Inc. v. Repco, Inc., 957 F.2d 1102 (3d Cir. 1992).  As discussed above, Plaintiff has produced sufficient evidence of negligent manufacturing to survive summary judgment on the claims for negligence in Count I.  That evidence is also sufficient to survive summary judgment on a breach of the implied warranty of merchantability.

Defendant argues that they disavowed the implied warranty of merchantability.  Def.'s Motion for Summary Judgment at p. 15.  An implied warranty for merchantability can be

9

excluded under Pennsylvania law.  13 Pa.C.S. § 2316(b).  The implied warranty of

merchantability is, however, "so commonly taken for granted that its exclusion from a contract is

recognized as a matter threatening surprise and therefore requiring special precaution. Thus, to

exclude the implied warranty of merchantability, the exclusionary language must mention the

term 'merchantability' and be conspicuous." <u>Moscatiello v. Pittsburgh Contractors Equipment</u>

<u>Co.</u>, 407 Pa. Super. 363, 369, 595 A.2d 1190 (Pa. Super. Ct. 1991).

The language Defendant relies on in support of its argument that it disavowed the

warranty is "Manufacturer specifically disavows any other representation, warranty, or liability

relating to the condition or use of this product."  This language does not specifically mention

merchantability, and is therefore insufficient to exclude the warranty.  Therefore, Defendant's

Motion for Summary Judgment as to the implied warranty of merchantability in Count III will be

denied.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL LANCENESE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 05-CV-5951 |
| | : | |
| VANDERLANS AND SONS, INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER**

**AND NOW** this 21st day of May, 2007, **IT IS HEREBY ORDERED** that Defendant's

Motion for Summary Judgment is **GRANTED** in part, and **DENIED** in part.  **IT IS FURTHER**

**ORDERED** that,

1.  Defendant's Motion for Summary Judgment as to Count II is **GRANTED**,

2.  Defendant's Motion for Summary Judgment as to the portions of Count III
    that allege breach of express warranty and breach of the implied warranty
    of fitness for a particular purpose are **GRANTED**;

3.  Defendant's Motion for Summary Judgment is **DENIED** in all other
    respects.

BY THE COURT:

s/Clifford Scott Green

CLIFFORD SCOTT GREEN, S.J.